May it please the court, I am Reginald McCamey and I represent Mr. Mark Zastrow and Heights Autopsy Appellants in this matter and today I'd like to discuss four issues that I believe show that the district court was in error in granting the motion for summary judgment. Number one is why 18 U.S.C. 1503 applies in civil matters. Number two, why there is no blanket immunity for attorneys to engage in obstruction of Number three, why participating in obstruction of justice by retaliating against a witness furthers a conspiracy and number four, why there is no deficiency in saying enterprise in the pleading and why that is not a deficient complaint. Now, why does 18 U.S.C. 1503 apply in civil matters? If you look at 18 U.S.C. 1962, it prohibits racketeering, 18 U.S.C. 1961 defines 18 U.S.C. 1503 as racketeering and 18 U.S.C. 1503 racketeering is defined as obstruction of justice. Now does obstruction of justice only apply in criminal cases? I would submit to you that it does not. If you look at 18 U.S.C. 1503, the language in section A, starting at the part or corruptly or by threats or force or by any threatening letter or communication influences, obstructs or impedes or endeavors to influence, obstruct or impede the due administration of justice shall be punished as provided in subsection B. Now that does not say criminal cases, it says in the due administration of justice. Why does that make a difference? If you look at section 18 U.S.C. 1513, that specifically says it requires action against criminal witnesses. If the Congress and legislature had wanted to limit 1503 to criminal cases, it would have said criminal obstruction or due administration of criminal justice. Now, was there obstruction of justice in this case? Yes, there was. I have submitted to you a timeline as an aid. If you would look at page 1 of 2, there was a purchase of a car. Why didn't you submit this with your brief? I just did not think about it, Judge. It doesn't do us any good since we haven't seen it. All right. Well, I'm just... Has opposing counsel seen it? Yes, I gave it to them. Today? Yes. Yes. Fine. So, if you look at the timeline, there was an inspection of the car by Mr. Zastrow, and prior to his testimony, a phone call was made to him and said, if you testify, things are going to be bad for you. He testified, and after he testified, there was another call to him from a Mercedes-Benz Greenway employee that said, you never should have testified. This is going to be bad for you. And at that time, the arbitration was held a few days later, and a letter was sent at the start of the arbitration by the law firm to Mr. Zastrow saying, we are severing any business relationship with you. Mercedes-Benz Greenway is severing any business relationship with you. So, clearly... Why don't they have the right to do that? If he's testifying against them and damaging their reputation and disparaging their products, they don't have to sell to him. Well, he was not disparaging their product. He was just giving truthful, honest testimony. I thought he testified about the condition of the car they sold. He did. That's their product. And so, they cannot do that in retaliation. It is a violation of 1503. It's a violation of 1982. I'm sorry. They cannot sell to him if he's bad-mouthing their business? No. Judge... Why continue a contract? They don't have to have a sale contract with him. I disagree, Judge. If someone is assisting someone enforcing their rights, you cannot then discriminate against them or retaliate against them because they are someone asserting their Section 1981 or 1982 rights. His testimony didn't have anything to do with racial discrimination. Oh, Judge, but it did. The basis of the Howards claim, if you look at the record at 1261, was retaliation by selling a defective car. The Howards claimed... Well, there were a lot of claims. That's not the only claim. But that was the basis of his testimony. They claimed fraud, negligence, breach of contract, breach of warranty, breach of fiduciary duty. I mean, all the testimony... He did. They did, Judge. But they pled retaliation by selling a defective car. Mr. Zastrow's testimony was that the car was defective. That assisted him in enforcing their rights. And so they cannot retaliate. Maybe their breach of contract rights, maybe their fraud and their negligence rights, breach of warranty. Judge, when they enforce, if you look at CBOX, the Supreme Court case CBOX 452, section 1982 provides protection from retaliation for reasons related to enforcement of the express statutory rights. But could they have had a 1981 claim if they didn't have an expert about the condition of the car? Correct. Could they? That's a question. No. That's the question. No. They could not. That was the basis of the claim. In order to not get poured out on summary judgment, they had to have an expert on that point. Yes. So that's essential to their 1981 claim. Is that what you're arguing? That is what I am arguing. Okay. But back on your RICO, how do you satisfy the predicate acts requirements? The predicate acts requirements is to 1503 and that the Mercedes-Benz Greenway had already retaliated against the Howards in their case. That was the finding in the arbitration and one of the aids I gave you was the case, was the arbitrator's ruling where he found that they had satisfied all of the requirements for establishing 1981 retaliation. They had retaliated against the Howards, Mercedes-Benz Greenway. Then they retaliated against Mr. Zastrow. They called him. The predicate acts were one. They called him and said, if you testify, this is going to be bad for you. So that was one act. After he testified in the deposition, they called him again and said, this is going to be bad for you. And then the third predicate. But those are different. Those are after the testimony. So that doesn't obstruct the proceeding. I'm trying to figure out if you have enough predicate acts before the testimony. I understand. It does. That was for the deposition. The proceeding did not take place until January 14. It started on January 14. And then what happened was Mr. Zastrow had been intimidated. He did not accept calls from, and the record is clear on this. He did not accept calls from Ms. Howard when she was trying to contact him. I tried to contact him. He was intimidated. So he did not attend the arbitration because he didn't know about it. He kind of put his head in the sand. And he was intimidated. Is that in the record? That he didn't testify because he was intimidated? I thought that was specifically not in the record. No. It is. It went back and forth, Judge. If you look at his testimony. At 1544 in the record, he testified. The question was, and you did not call Mr. McKamey on January 7, the day before the deposition. This is at 66. And the record is 1544. When Nathan told you it would be a bad idea to give a deposition. I do believe I did tell him that question. You do believe you told, answered, that I did call, that I did talk to him. Because I had already committed to doing this, and then it's going to the arbitration thing. And then he threatens me the day before. I mean, I'm not the kind of guy that's going to drop a dime on somebody. But I think, I do believe I did tell him that I was being threatened not to do this deposition. Because I wanted him aware of it. He also testified in the record at 1541. He called at, this is page 61 of his deposition, line 16. He called me the day after the deposition. That was on the 8th. So it had to be the 9th because it was the next day. I said, all right. And then you called Mr. McCamey about that. Yeah. Yeah, that startled me. And then he testifies on page 63, starting at line 15. When you were giving your deposition testimony, did you feel intimidated at any point by any of the questions I was asking you? Answer on a few. Question, like which ones do you recall? Like I don't understand how we railroaded the catching that car on fire. I didn't understand that. And then when they were asking about how much the shop makes, how much I make, I didn't think that had anything to do with anything. Okay, we'll read 1544. Was there, I didn't mean to keep you, your time is running. I understand, Judge. So he was intimidated and did not want to be involved with the arbitration. So they obstructed justice, so he didn't participate. And I had to read his testimony into the record or read the testimony to the arbitrator from his deposition because I did not have him lying. Did you try to subpoena him? No, I did not, Judge. I thought I could call him and he would show up. He was an expert witness. So he was clearly intimidated. Those were the three acts of the predicates, the call the day before the deposition, the call after the deposition, and then the letter to them. Now, the appellees will argue that he did not receive the letter before. It doesn't matter if he did not receive the letter before. They did the act of obstructing justice by sending the letter. They knew that the arbitration was going to be that week, and they sent him the letter on the 14th. Now, why is there no deficiency in saying enterprise? Federal Rule of Civil Procedure 8 allows for a brief statement and does not require technical form, Federal Rule 8D1. And pleadings must be construed to do justice. And in this case, justice is not allowing witnesses to be intimidated when they are helping people assert their 1981 rights. There's a federal service that basically said there's 50 million witnesses in state cases, 2 million witnesses in federal cases. That, we cannot allow those people to be intimidated that will be witnesses in those cases, and it's important to do that. With arbitrations, there's 2 million arbitrations a year where there's witnesses involved. Let me ask you about your RICO claim. How do you satisfy the continuity requirement? The continuity requirement? If you look at the association between the law firm and Mercedes-Benz Greenway, they were the attorneys in the Howards case. They were also associated with them in the Zastro case. They sent the letter. It is not likely that their association would not continue, and so— Maybe you didn't understand me. Where's the threat of repetition? Where's the existence that this would occur again? Humiliation or retaliation or intimidation or whatever? I see. Thank you. The fact that they did it to the Howards, and that was documented with the arbitration. The arbitrator found that they did it there. And then they did it to Mr. Zastro. They retaliated against him. There's a pattern, and it shows that if they are not stopped, it will continue. But how else are they going to do this, too, that's part of this? Because we have a case called Brzezinski that says that if it's in the context of defending one lawsuit, the unlawful conduct doesn't threaten or continue long-term criminal activity. You know that case. So why isn't this in the context of one lawsuit? I mean, there's not some kind of allegation that they're going to go and try to sell defective cars to African Americans or something like that, that that's not part of this case in the future, or that there's some kind of criminal thing that they're going to boycott or something, lots of people or anything like that. I would submit that they did it to the Howards. They did it to Mr. Zastro. In any other proceeding that they will be in, Mercedes-Benz, Greenway, and they have these lawyers with them or other people, they will again try to retaliate. They have to be stopped from retaliating now. How do you distinguish the case, Brzezinski? I would just say that they have done it several times, just the facts of the case. Okay. All right, thank you. Have some time for rebuttal. You all have split your time, is that correct? Yes, we have, Your Honor. Okay. Twelve and eight. May it please the Court, Daniel Kaspersak for the appellant, Mercedes-Benz of Houston, Greenway. Let me first start by saying that there is nothing in the record to support what was just represented to this Court that Mr. Zastro ever testified that he was intimidated. To the contrary, at his deposition, Mr. Zastro affirmatively stated that the one call he received from the unidentified person at Mercedes-Benz the day before the deposition had no effect, either upon his appearing at the deposition or upon his truthful testimony at the deposition. When it came to the portion of the deposition regarding when the questions of the deposition were asked regarding why didn't you show up at the arbitration hearing, which was seven days after his deposition. Deposition was taken January 7th. The arbitration was January 14th. Are you disputing that the employee called him and said that doing the deposition would cause some problems, and I'm using that to rephrase it nicely? No. We're not disputing the fact that the call occurred. We're disputing that Mr. Zastro ever testified that he was intimidated. But you're not, even the contents of the call, you acknowledge that the person called him and said, if you testify, you're going to get it. For purposes of the summary judgment record, we have to accept that is true because the fact supporting the non-movement. The fact is disputed by the person who was eventually identified as being misnomered as Nathan Hart, and the assistant parts manager, Nathan De Los Santos, gave his deposition to Mr. McKamey, and he stated that he never called him before the deposition. He didn't know there was a deposition. He called him a day or two after the deposition was given and said, I have to tell you we can no longer sell you parts because of the ongoing litigation. But for summary judgment purposes, we have to accept that is true. What I'm disputing here is my colleagues standing up and misrepresenting to this court that his client testified at his deposition that he was intimidated, and that's why he didn't show up at the arbitration proceeding. The reason he didn't show up at the arbitration proceeding was because he was not called by Mr. McKamey. He didn't want McKamey to come to the arbitration proceeding, and he claimed after the break in the deposition that he received some telephone calls from Mrs. Howard that week but didn't take them because he didn't want to be bothered with the case anymore. But he didn't know the arbitration proceeding was going on the 14th, and he was not asked by anyone to appear. He says at page 59 of his deposition that, so if you had been contacted and asked to appear in behalf to testify on the Howard's behalf during the arbitration hearing, you would have shown up. Answer, yes. And I've scoured the deposition transcript both this morning and previously, and I've never seen any claim of intimidation in his testimony, and there's no other evidence of intimidation in the record. In fact, the record establishes that whatever calls were made, disputed or undisputed, they didn't affect his testimony at his deposition. There was no effort to call him live at trial at the arbitration proceeding. He was presented by deposition at the arbitration proceeding as the first witness, and the letter didn't even go into the mail until after his testimony had been read into the record. For 1981, does he have to actually be affected or the fact that the action is made? The plaintiffs are relying upon 1981 for the retaliation element and not the witness tampering. So there's no witness tampering in 1981, only retaliation. Only retaliation there. Why isn't it 1981 retaliation? Judge, I know you argued in a 28-J something about Texas private contract law, but respectfully, doesn't 1981 trump Texas private contract law? And so you can't enter into discriminatory contracts. You don't have freedom of contract completely in the United States because you also have to comply with the discrimination laws. We're not able to find any authority that says during pending litigation that a party defendant has to continue doing business with a party plaintiff or any of its witnesses. But do you dispute in general that 1981 itself interferes with people's private right of contract? It tells you you have to—you can't discriminate, and so you have to— that's kind of one of the whole purposes of 1981 is to get in the mix of those businesses and make them provide services, and that's the historical context of 1981, isn't it? I understand where Your Honor is going. Sorry. Yes, under certain circumstances, if there was actual testimony supporting a third party's 1981 claims, a direct discrimination claim, then it would be like having an at-will employee who you can terminate for any reason, but you can't terminate for an unlawful reason. Terminating somebody who did testify in support of a 1981 direct discrimination claim would be unlawful. Mr. Zastrow also admitted in his deposition that he gave no testimony in support of the 1981 claim or any of their discrimination claims or retaliation claims. He admitted he had no knowledge of their claims or what their claims were based upon. Did he really admit that he had no knowledge that they were making a 1981 claim at all? Yes. Can you give me that exact testimony or give me the page number? I read it at 4.30 this morning, Your Honor. Well, that was prescient of you. Was that when you were coming in or— No, that was as I was getting up next door waiting to prepare. I'm having a hard time finding the exact testimony. I don't believe it. Does he have to actually be testifying about race discrimination or any kind of discrimination, or does he only have to be testifying in support of the claim? If he were to come in and talk about attorney's fees and that was part of a claim, he wouldn't have to be testifying about discrimination. He would just have to be testifying about an element that was required to be proven, right? Under that interpretation, anybody who testifies about anything in a case that might have 19 different causes of action and one of them could be Section 1981 retaliation, they testify about everything in the world but the retaliation, are they protected by 1981? That's certainly the scope that the appellant is trying to get this court to expand to. I don't believe that's accurate. Under Humphreys, it's very clear that what's required is testimony specifically with respect that assists the person who has been the victim of direct racial discrimination. At the time of this arbitration proceeding, the racial discrimination claims had been resolved. It's admitted in the Howard's pleadings in the arbitration proceeding that the purchase of the vehicle was incident to the resolution of their claims of racial discrimination against the dealership. That's why the only 1981 claim remaining at the time of the arbitration was racial retaliation, not racial discrimination. But if they would not have purchased, having a defective vehicle is essential for their racial discrimination claim, isn't it? Because what is the vehicle, what is the basis for having a race discrimination claim if there's not a defective vehicle? The racial discrimination claim, it's admitted in their pleadings that they had a racial discrimination claim and it was settled when Mercedes-Benz sold them the used vehicle. Their initial claims of racial discrimination were when they were previously looking for a used vehicle and they couldn't get credit through Mercedes-Benz credit. And the reason they couldn't get credit was because they were looking at a used vehicle that had more than 100,000 miles on it. They threatened to bring a racial discrimination claim at that point. They were pro se at the time. Mercedes-Benz negotiated with them and sold them this used vehicle that had less than 100,000 miles on it. And then they filed the complaint that we paid $23,000 for this vehicle. It's only worth $19,000 and you did that in retaliation for our threats of racial discrimination. That's what was tried at the arbitrator. That and the deceptive trade practices. I don't think you answered my hypo. If you have a claim of race discrimination and you have to have an expert come in and testify on attorney's fees, because you're entitled to attorney's fees in the hypo, and it's testifying that the services were rendered and they really are not looking at the merits of the underlying claim. They have somebody else prove that up. Why isn't that still in furtherance of the 1981 claim? Because it's in furtherance of something that's ancillary or separate and apart from the 1981 claim. But you wouldn't be entitled to the attorney's fees in the hypo, but for the presence of the claim about discrimination. And any of the other claims involved. I think the clear language in Umphrey's makes it very clear that for the retaliation claim to rest, it has to be somebody who's testifying in support of attempting to assist another person in securing their 1981 rights. And it uses the specific language of direct racial discrimination. And there was no support of any claims for direct racial discrimination because of the arbitration proceeding. There was no claim for discrimination, only retaliation. And Mr. Zastrow had no knowledge of any discrimination or retaliation, so he could not testify in support of it. To broaden the interpretation of the already common law expansion of 1981 retaliation claims, to broaden it to any witness in the case under any circumstances would be an extreme extension of this case, and it would have a very chilling effect upon trial attorneys. It would be an extreme extension, but why didn't you argue in defense of the 1981 retaliation claim that you quit selling parts to Mr. Zastrow because he testified against you, he disparaged your company's product and service quality? I mean, that's a real reason not to do business with someone when he took the stand as an expert witness and testified against you. But did you bring that explanation? I brought that argument and cited the Texas Supreme Court cases on the freedom of contract, that the parties are free to contract under those circumstances. It was not one of the bigger arguments in our brief, but I'm sure we addressed it because we did cite the two Texas Supreme Court cases on freedom of contract that you were referring to earlier. Do you concede that it was- Do you think you made that argument? I think it was in our original brief, our original reply brief. Do you concede that it was improper for the employee to make the call if it was made, and if the counsel would have been involved, that they would have counseled under Texas disciplinary rules of lawyers not to do that? If counsel had been involved, would we have advised them not to do that? Probably, but only because it's a communication with a party or their agent during ongoing litigation and not- You encourage someone not to testify. Is it violation of the Texas disciplinary rules of professional conduct? Is it not? I'm sorry. I thought you were talking about the call afterwards where they called and said- No, I'm talking about the before. He had already testified at that point, Your Honor. The only call- No, I'm talking about the call on March the 4th. I mean, I'm sorry, the call on January the 7th. The deposition was- Before the deposition. Okay. The call before the deposition. Oh, certainly. If the lawyer had been involved, that would have been a violation of the Texas disciplinary rules. No question involved. And the client disputes making that call, but that was your first question, Your Honor. For purposes of summary judgment, Mr. Zastrow claimed somebody named Nathan Hart called him before the deposition and said the expletive, and it was a very short conversation. If the attorney had been involved, that would have been a violation. The attorney was obviously not involved. There's no evidence that the attorney was involved until the 14th of January when he was asked to send a letter by the client confirming the client's intention to stop doing business. And that was one of the points I wanted to make here this morning. I see I'm out of time, but there is no evidence in the record that the attorney did anything, had any involvement in the operations of the business or the affairs. There's nothing except the letter and the testimony of Mr. De Los Santos who says, who made the decision, who told you to call him and tell him you weren't selling parts anymore? My supervisor at Mercedes-Benz of Greenway. There's no evidence that there was any involvement by the attorney until the letter was written the following week. All right. Thank you. I'll yield the rest of my time to my co-counsel. You don't have any more time. About the 20 minutes. Right. Thank you. She's got eight minutes, right? Good morning. May it please the Court? My name is Dawn Holliday, and I'm here on behalf of appellees Johnson, DeLuca, Karisky, and Gould and attorney-defendant George Karisky from the law firm. And to piggyback off of what my co-counsel was stating as his time ran out, the reason why the attorney-defendants are being sued in this case is because they wrote a letter. They wrote a letter that basically confirmed in writing what their client had already informed Mr. Zastrow. They wrote the letter on January the 14th, the first day of the arbitration proceeding. My co-counsel has already presented to the Court that there was no evidence of any intimidation that caused Mr. Zastrow not to appear at the arbitration proceeding to provide testimony in support of any claim that was brought by the house at that time. Do you concede if it was improper for your client's clients to decide to end the business relationship, do you concede that it would also be improper for the lawyer to write the letter memorializing that? I do not concede that it would be improper for the lawyer to write a letter memorializing the client's decision to terminate the business relationship. Why not? Because the lawyer is the agent for the client. Right. If the client had decided to make that decision, then I think it's within the lawyer's right to write a letter because they are being represented by my client during the arbitration proceeding, which had not been terminated yet. Okay. Assuming, arguendo, that we weren't dealing with this particular 1981 situation, we're dealing with some illegal conduct, if the client decides to engage in illegal conduct, the lawyer can't write a letter memorializing that and say, oh, I'm just acting as an agent. In fact, acting as an agent puts the client, the lawyer, in the illegal conduct, doesn't it? I agree that if the client was engaged in illegal conduct, then the lawyer would also be— That was the premise of the previous question. I said if it was, in fact, illegal and a violation of constitutional rights for the client to do what it did, wouldn't the lawyer automatically be on the hook, too, because it wrote the letter as an agent of the client? Maybe I misunderstood your question, but based on the clarification of the question, I would agree with that scenario, that if the lawyer has knowledge of the client engaging in illegal activity and he memorializes that legal activity in writing the letter, then I would agree that the lawyer would be on the hook for that. Did the lawyer know there was a 1981 case? Yes, the lawyer did know, but in this case, there's no evidence, though, that what they did was illegal. That's what we're trying to decide. Right. As my co-counsel pointed out, they had the freedom to contract. They had the ability to decide whether or not they wanted to continue to do business with Mr. Zastrow. Do you have a right to decline to do business with someone because they helped a civil rights case? Can you decline to do business with someone for that reason? I would say no, you cannot, because that would be a violation under 1981. However, in this case, the reason that was given in the letter was, we are terminating our business relationship because you were an expert witness in a case against us, basically, is what it says. That seems retaliatory in nature by the fact that we're terminating our business relationship because you testified in this matter. However, if you look at the elements of the 1981 claim, they can't make the elements to establish retaliation based on that letter. Why not? Under RICO, violation of section 1962C, the elements are a person who engages in a pattern of racketeering activity connected to the acquisition, establishment, or conduct or control of an enterprise. I'm not talking about the RICO elements. I didn't think you were. I thought we were talking about retaliation under 1981. Retaliation under 1981, I don't think there was a violation by my client writing the letter that terminated their relationship. All retaliation isn't bad. A company can retaliate against someone who testifies against their company and harms their professional reputation, but if it's based on a racial reason or a racial foundation, then there's a problem. You're saying the letter explained that it was a contract matter, freedom of contract, and they could choose not to do business with this expert witness. Right, and the retaliation under 1981 is only available for actions taken against someone who was helping another secure their 1981 or 1982 rights. Why weren't they helping someone do their 1981 rights? The district court correctly determined that Mr. Dastrow's testimony was strictly about the vehicle. As my co-counsel pointed out, the testimony about the vehicle had nothing to do with the 1981 claims, which had already been resolved prior to the house purchase of the vehicle. If it were, in fact, that you had to be able to establish that the vehicle was defective in order to make your 1981 claims, that the plaintiff had to make their 1981 claims, would you have the same argument, or would you lose? I wouldn't have the same argument because the 1981 claim arose prior to the purchase of the vehicle, so they had that claim based on the process of going to the dealership, having different people racially discriminate against them regarding their credit, regarding whether or not they could afford the vehicle. Those actions took place prior to the purchase of the vehicle. The arbitration hearing addressed whether or not they were sold a defective vehicle that the Mercedes-Benz dealership failed to disclose the defects. Okay, so in a hypo, suppose that the hypo is that they did, in fact, that they sell— that the dealership allegedly sells African Americans defective vehicles for whatever reason. It's got some lemons on the lot, and they sell those. Then they call in an expert to say, this is indeed a lemon. In that hypo, if they discontinued the relationship with the expert, would that be retaliation under 1981, which would be illegal? I don't think so because the retaliation is not related to the selling of the defective vehicle. The retaliation was based on the discrimination. But the vehicle for the discrimination is the car being defective. They're selling defective cars in the hypo. I have to see whether that's the fact in the case or not, but in the hypo, they're selling defective cars. Was the arbitration just to resolve the breach of warranty, breach of contract, since you said the discrimination claim had already been settled? The discrimination claim had already been settled. It was still a part of the pleadings at the time because they had reached an agreement to resolve the discrimination claim. So, in the order— It should have been resolved. Right. In the order, though, it does mention a 1981 claim, but that was based specifically on retaliation and not the racial discrimination, the credit discrimination that had been resolved prior to the purchase of the vehicle. But the 1981 retaliation is resolved in the award of the arbitrator. Right, based on the agreement that the parties had reached prior to the purchase of the vehicle. I thought that because he established all of the elements necessary to establish liability for 1981 discrimination—1981 retaliation. I'm sorry, what was your question? I guess I'm confused about the award of arbitration because it appears to say that they established all the elements necessary for 1981 retaliation. And that retaliation was based on the prior agreement to resolve those claims based on racial discrimination and credit discrimination. All right, thank you. Let me first just say the retaliation claim was not resolved. It was found by the arbitrator. And it was based on item 44 that is in the record at 1261, the Howards pled intentional racial discrimination inflicted upon plaintiffs by defendant Houston Auto Imports Limited doing business as Mercedes-Benz Greenway Houston. A subsequent retaliation by defendants when they sold the plaintiffs a massively mechanically defective certified vehicle on December 13, 2008 were in violation of some or all of the following statutes. And B is 42 U.S.C. section 1981. Now, Mr. Zastrow's testimony was important to show that it was a massively defective vehicle. So that retaliation claim was not settled by agreement. Now, I would encourage the panel to look at these sections in the record. 1543, 1544, 1546, and 1547. Clearly, Mr. Zastrow points out in those sections of the deposition that people tried to call him. He says, I guess Howard called to tell me there was arbitration, but I rejected all calls. All right, so you didn't actually talk to her. Yes, I didn't know that she was calling for the arbitration. I just didn't want to deal with this anymore. Question, when you say this, you mean answer the laws. Question, let me answer the Howard thing. After Nathan had called me and told me this thing, that this is going to be a bad deal. So he clearly was intimidated and did not want to know about the arbitration, contrary to what counsel has said. Now, they say, well, he didn't know he was testifying about discrimination. He's not a legal expert. His job was to testify and prove that it was a massively mechanically defective vehicle to satisfy the 1981 complaint, solely to satisfy the 1981 complaint. And Seabock, at 452, the Supreme Court case, says, this court has long held that the statutory text of Section 1981, Sister Statute 1982, provides protection from retaliation for reasons related to the enforcement of the express statutory right. Now, opposing counsel says he was not testifying about the deficiencies related to the 1981 complaint, that he was only testifying about the contract claims about the car. Where in the record can we find that he was testifying really about a 1981 retaliation claim arising out of the defective vehicle? Where is that in the record? He is never going to testify that there was discrimination. I'm not asking where his testimony is about it. I'm asking where in the record. Was he testifying about a 1981 claim, or was he testifying about a defective car on contract claim? Where do I find that? That would be at 1261. 1261 in the record. That is the Howards complaint, where they allege that they were sold a massively defective vehicle in violation of 42 U.S.C. 1981. So they say that they were sold a defective vehicle because of their race. Yes. It's at 1261. And they say it is in violation of 42 U.S.C. section 1981. And so he was there to testify about that. And then the lawyers engaged in an overt act by writing the letter. Now, that's different than the Ernst & Young case. In Ernst & Young, which has been discussed in the briefs, there was not an overt act. There the accountants did not mention the footnotes in the financial summaries. And so it's different than this particular case here, where there is an overt act. It's almost as if this law firm were sticking a knife in Mr. Zastrow and saying, We told you not to do it, and we're retaliating against you. And they will continue to perform this conduct if they are not stopped. Thank you. All right. That concludes the arguments for today. We'll be in recess until tomorrow at 9 o'clock.